IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID L. DEFREES,

    Plaintiff,

v.    Case No. 14-1376-JTM

CAROLYN W. COLVIN,
    Acting Commissioner of Social Security

    Defendant.

MEMORANDUM AND ORDER

David DeFrees applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on October 28, 2011. The Commissioner of Social Security denied his application upon initial review on March 1, 2012 (Tr. 86) and on reconsideration on June 27, 2012 (Tr. 88). DeFrees sought review by an Administrative Law Judge (ALJ). Following a hearing on May 8, 2013, the ALJ determined that DeFrees was not disabled within the meaning of the Act. (Tr. 21-39). The decision of the Commissioner became final when the Appeals Council declined DeFrees's request for review on September 11, 2014. (Tr. 1-4).

DeFrees then filed this appeal, which argues that the ALJ erred in his May 31, 2013 decision in determining at step two of the sequential process that he did not suffer from any severe impairments. DeFrees suffered a heart attack on September 6, 1999, and

has stated that he became disabled on that date due to coronary artery disease, as well as obesity, sinus disease, xerosis, bilateral calf and hamstring tendonitis, and post-traumatic stress disorder (PTSD). For the reasons provided herein, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record, and the decision of the Commissioner is affirmed.

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g). The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her

past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether

3

the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

Here, the ALJ agreed that DeFrees suffered from the medically determinable ailments of coronary artery disease, obesity, sinus disease, and tendonitis. However, these conditions were not severe, since they did not limit his ability to perform basic work-related activities for 12 consecutive months. DeFrees was last insured for disability benefits on December 31, 2001.

At step two, an impairment is not severe if it "does not significantly limit the physical and mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The court finds that substantial evidence supports the ALJ's decision with respect to step two. As to DeFrees's tendonitis, the ALJ noted that the only evidence to support the existence of this condition is a letter from Dr. William Bohn (M.D.) issued on September 24, 1996 recommending against the use of stairs and suggesting other limitations.

However, Dr. Bohn also indicated that the tendonitis was present "from childhood." (Tr. 680). Notwithstanding this condition, DeFrees was able to complete four years of college and hold down numerous jobs, including an extensive service in

the military. More importantly, the 1996 letter gave no indication of DeFrees's condition three years later, and the ALJ reasonably discounted the letter.

As the ALJ noted earlier in his opinion, DeFrees otherwise acknowledged that he could independently take personal care of himself, cook, perform housework including dusting and laundry, and do light yard work. After his 1999 heart attack, he reported exercising daily. The ALJ also observed that in November, 2000, DeFrees reported exercising with cardiovascular effort five times a week. In May of 2000, he reported that he had lost 50 pounds since the heart attack. Substantial evidence supports the ALJ's determination that DeFrees "maintained significant activity up through the date last insured." (Tr. 26).

In reference to the tendonitis, the ALJ found that "[t]here were no medical records … relating to the claimant's tendonitis or that provide the underlying factual support [for] Dr. Bohn's opinion" and thus there was no basis for finding DeFrees's actual "physical presentation at the time he made this statement." (Tr. 25). There was simply no evidence of severe tendonitis at the time of the alleged onset of disability.

The ALJ's concern for evidence relating to DeFrees's actual physical condition at the time of the alleged onset in 1999 is heightened given the explicit determination that DeFrees's statements as to his own condition "are not entirely credible prior to the date last insured." (*Id.*) Notably, the claimant does *not* challenge the ALJ's credibility determination in the present appeal.

The ALJ reached similar conclusions with respect to DeFrees's other cited impairments. With respect to the PTSD, there was simply no evidence from any

5

medically acceptable source that DeFrees suffered from this condition at the time of onset. There is no evidence of mental health treatment during the relevant time period. (Tr. 27). Similarly, there is no evidence in the record showing that DeFrees's xerosis (a dry skin condition) or obesity were severe. The evidence of xerosis indicated simply that DeFrees suffered "mild itching" in November, 2011, and there was no evidence that obesity caused any actual "limitations in any of the exertional, postural, and manipulative functions or … in environmental tolerances." (Tr. 26).

As to the claimant's heart condition, the ALJ found that DeFrees was discharged from the hospital four days after his heart attack:

> Immediately following discharge, the claimant reported periodic lightheadedness but reported he could walk up to one-half mile without symptoms. On September 30, 1999, physical examination revealed normal findings. By November 1999, the claimant could walk up to 4.6 miles without symptoms, and findings upon physical examination remained within normal limits. A stress echocardiogram revealed no evidence of inducible ischemia with "excellent functional capacity" characterized by an ejection fraction of 55% at rest.

(Tr. 26 (record citations omitted)). In May of 2000, DeFrees reported that he did not experience any feelings of pain, tightness or pressure in his chest and that he was "doing well" (Tr. 397). He repeated these statements in May of 2001, and a physical examination "produced findings within normal limits." (Tr. 26). As a result, there was no evidence showing the cardiac impairment was severe for any twelve-month continuous period from 1999 through 2001. *See* 20 C.F.R. § 404.1509.

The ALJ reasonably discounted Dr. Bohn's 1996 tendonitis letter because it was remote in time from the onset date and "offers nothing to shed light on the claimant's

functional capacity during the relevant period." (Tr. 25). The ALJ also reasonably concluded that two medical source statements submitted by Dr. Kirit Masrani (M.D.) should be given no weight. The ALJ observed that the very severe limitations recommended by Dr. Masrani – sitting, standing or walking for no more than an hour at a time and never lifting more than twenty pounds – were directly at odds with the actual results of "the cardiac examinations documented in 1999 through 2001, which note the clamant denied chest pain and shortness of breath and had a rather normal ejection fraction of 55% at rest." (Tr. 28).

Finally, DeFrees challenges the ALJ's decision to give no weight to the decision of the Veteran's Administration (VA) to pay him disability benefits.

The ALJ observed in his order that he was

> mindful that the claimant has been found disabled by the Veteran's Affairs Administration and is currently receiving disability payments from that agency. However, the Social Security Administration makes determinations of disability according to Social Security law, therefore a determination of disability by another agency is not binding on this Administration. (20 C.F.R. 404.1504 [20 C.F.R. 416.904], *see also* SSR 96-5p on issues reserved to the Commissioner). Therefore, any reference in the file to a finding of disability by the Veterans Affairs Administration is given no weight.

(Tr. 25 (citation omitted)). In a subsequent portion of his opinion addressing DeFrees's PTSD, the ALJ directly discussed the VA's decision to award benefits. The ALJ first noted the requirement for acceptable medical source evidence of an impairment (under 20 C.F.R. §§ 404.1513(a) and 416.913(a)). The ALJ contrasted this requirement under Social Security law with the evidence offered by DeFrees:

> Rather, in this case, a letter provided by the claimant from the Department of Veterans Affairs and dated November 20, 1996, describes how the claimant's military disability was based, at least in part, on posttraumatic stress disorder. (Exhibit 6E/9). Yet, again, there is no medical information available to this agency that supports that finding of disability.
>
> *There is no medical evidence of any mental disorder during the period before the date last insured.* While it is possible this condition caused or contributed to cause concentration and social problems at some point, as claimed by the claimant, there is no corresponding diagnosis from which I can consider posttraumatic stress disorder a medically determinable impairment.

(Tr. 27 (emphasis added)).

The court finds no error. The decision by the VA to award benefits does not compel the Commissioner to automatically award benefits. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 19992). An ALJ should consider the existence of VA benefits, and the ALJ in present action did so. The ALJ accurately found that the VA records document the award of benefits for PTSD and tendonitis in 1996 (Tr. 276, 391, 384), but the records fail to contain medically acceptable source evidence and relate to dates remote from the alleged onset date.

Moreover, the ALJ independently found that DeFrees's tendonitis was not a severe impairment. First, as noted above, the ALJ appropriately discounted Dr. Bohn's 1996 letter, "[t]he only document describing the [tendonitis] condition," as lacking in factual support and remote in time from the onset date. Thus, there was "insufficient evidence to show the tendonitis was severe during the relevant period." (Tr. 25). In contrast, the ALJ noted the DeFrees's daily living activities and concluded that, "[a]s for physical activity, the medical evidence suggests the claimant maintained significant

activity up through the date last insured." (Tr. 26). The ALJ did not wholly ignore the VA's decision to award benefits, but appropriately decided the plaintiff's application on the basis of the actual evidence in the record.

IT IS THEREFORE ORDERED this 31st day of March, 2016, that the judgment of the Commissioner is affirmed.

                                      ___s/ J. Thomas Marten_____
                                      J. THOMAS MARTEN, JUDGE